## Case No. 14,398.

### UNION SUGAR REFINERY v. MATHIESSON.

[3 Cliff. 146.] [1]

Circuit Court, D. Massachusetts. May Term, 1868.

ACCOUNT—REPORT—REVISION—PRACTICE IN EQUITY.

1. Upon the final hearing of a cause in equity, a final decree was entered, and the cause referred to a master, to take, and state to the court, an account of all gains and profits made by the defendants. No report was made by the master, but the following entries were made upon the docket: "May 27th. Master's certificate upon settlement of interrogatories, with state of facts, and schedule filed." "Roll containing nine drawings filed with certificate." "May 31st. Exceptions to master's certificate and report filed." Ordered, that the filings entered by the clerk be stricken out, and that the several papers filed be returned by the clerk to the master.

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

2. Explanation of the correct practice in this circuit, where a cause has been referred to a master to state an account.

3. In case the decretal order was ambiguous, the master might have authority to report the case back for more specific instructions.

4. The court might have power to revise each act of the master, as it progressed, but such a practice would be productive of delay, and will not receive countenance from the court.

[Cited in Lull v. Clark, 20 Fed. 455; Bate Refrigerating Co. v. Gillette, 28 Fed. 674.]

5. When a suit in equity has been heard, neither party has a right to file any paper in the cause, except by leave of court.

6. The correct method is, for a master, if possible, to complete his investigations under the rules, make up his draft report, file it in the clerk's office, and give time for the parties to make their objections thereto.

The decree in this case was as follows:—It is ordered, adjudged, and decreed that the letters-patent [No. 37,548], dated January 27, 1863, granted to the complainant as assignee of Gustavus A. Jasper, for an improvement in purifying and cleansing sugar, is a good and valid patent; that said Jasper was the original and first inventor of the improvements therein described and claimed; that the defendant [Francis O. Mathiesson] has infringed upon the said patent and the exclusive right of the complainant thereunder; that the complainant recover of the defendant all gains and profits by him made from his infringement of the said patent by his unlawful using of the patented invention in purifying and cleansing sugars, at any time since January 18, 1864; that the complainant recover of the defendant his costs and charges in this suit to be duly taxed; that it be referred to George S. Hillard, Esquire, one of the masters of this court, residing in the city of Boston, to take and state to the court an account of all such gains and profits made by the defendant as aforesaid; that the complainant in such accounting have the right to cause an examination of said defendant ore tenus, or otherwise, and also the production of all books, vouchers, and documents relative and pertinent to such accounting; and that said defendant attend for such purpose before said master, from time to time, as said master may direct; also, that an injunction according to the prayer of this bill be issued against the said defendant, to stand until the further order of this court.

[See Cases Nos. 14,397 and 14,399.]

B. R. Curtis, Chauncey Smith, George H. Preston, and C. W. Huntingdon, for comp'ainant.

E. W. Stoughton, Robert Gilchrist, Jr., Causten Browne, A. C. Washburn, and W. P. Walley, for respondent.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

CLIFFORD, Circuit Justice. Strong doubts are entertained whether the case is properly before the court, under circumstances which will authorize it to make any order therein. The cause went to final hearing upon pleadings and proofs, and the conclusion of the court was expressed in the decree entered on the occasion. The substance of the decree was, that the inventor was the original and first inventor of the improvements described in the patent; that the defendant had infringed upon the patent; that the complainant should recover of the defendant all gains and profits made by him from his infringement of the patent, by his unlawful use of the invention, in purifying and cleansing sugar, after the time alleged in the bill; that the cause be referred to a master, to take, and state to the court, an account of all such gains and profits made by the defendant; that the complainant in such accounting should have a right to cause the examination of the defendant ore tenus, or otherwise, and also the production of all books, vouchers, and documents relative and pertinent to such account; and that the defendant attend for such purpose before the master from time to time as the master may direct.

No report has been made by the master, but we find upon the docket the following entries:—"May 27th. Master's certificate upon settlement of interrogatories with state of facts and schedule filed." "Roll containing nine drawings filed with the above certificate." "May 31st. Exceptions to master's certificate and report filed." These are all the entries that need to be referred to at this time.

When a suit in equity has been heard and submitted to the court for decision, neither party has a right to file any paper in the cause except by leave of the court. Such prohibition commences at the date of the submission of the cause to the court, and continues throughout the period that it remains upon the docket thereafter. The master may report back the cause to the court at any time when he has completed his investigations; and it would be the duty of the clerk to allow him to file his report without any new order from the court, as the right to do so is implied from the decree, referring the cause to him for the purpose specified in the decree.

No report has been made in this case by the master, although the docket entry describes the first paper filed as the "master's certificate upon the settlement of interrogatories, with statement of facts and schedule." Referring to the paper, it appears that the master, upon settling certain interrogatories to be propounded to the defendant, made the following memorandum in his own office: "May 22, 1867. Upon argument, the above interrogatories are settled and allowed, and state of facts setting forth the defendant's objection to the interrogatories are herewith filed, marked 'A,' with my initials and with this date" (signed by the master). Nevertheless it is true that no report of the case has been made by the master to the court; and

the cause is still pending before the master. Our impressions are, that the proceeding is irregular, and, if allowed, would work very considerable inconvenience. Besides, we are of the opinion that it is a departure from the usual course in equity suits, at least in this circuit. We are not, however, inclined to place our decision entirely nor even chiefly upon that ground on the present occasion.

The better practice, as the court thinks, is for the master to complete his investigations under the rules prescribed by the supreme court, and in accordance with the usual course of proceeding in equity cases in this circuit. The usual course is, that the master allow both parties, if they desire, to introduce testimony upon the subject of damages. He hears them fully, and when he has taken all the testimony, heard the parties, and come to a conclusion, he makes a draft of his report in the premises, and shows it to the parties, or files it in the clerk's office, and gives time for the parties respectively if they see fit, to make their objections to the drafted report. When those objections are made, it becomes his duty to consider or reconsider, as the case may be, the questions involved in those objections; and if, upon full consideration, he is still of the opinion that he was right in the conclusions formed and stated in the drafted report, he then makes his final report, and the parties have a right to file their exceptions to the final report, founded upon the previous objections made to the draft report, and then the whole matter comes back to the circuit court for adjudication upon the master's report. Either party may set down the case for hearing upon the exceptions to the master's report. Both parties may except; both may object in the first instance to the draft report, and both parties may afterwards except to the final report. They are entitled to be heard upon all the questions which have arisen before the master, provided they are embraced in their objections and in their exceptions.

When the exceptions are filed, if either party desires the evidence to be reported, they request the master to report it in whole or in part, as the case may be. It is the usual course for the master to comply with such a request; but if neither party makes the request, it is not incumbent upon the master to report the evidence at all. He may or may not, in his discretion, as he sees fit. If he does report the evidence at the request of one or both parties, it then becomes the duty of the court, if there be proper exceptions, to review the questions of fact embraced in the report as well as the questions of law. But, if the evidence is not reported, the court does not review the facts, but simply re-examines the questions of law. Such has been the practice in this circuit as far back as the knowledge of the justices now holding the court extends; and there has been no departure from the practice, since either of us came

into the court, within the recollection of either member of it.

Authorities are referred to, very properly, by the respondent in this case as showing that exceptional cases have occasionally arisen, which support the course adopted on this occasion as a correct course. Our attention has been drawn to those cases, more especially to those referred to in the Circuit Court Reports of this circuit; but we think they do not sustain the course adopted in this case. One of the cases, which was a suit at law, contains some remarks of Judge Story, which at first reading might seem to afford some countenance to the supposed right of a party to bring back from a master questions arising there for the preliminary consideration of the circuit court. That was, as before remarked, a suit at law. It was a case of interrogatories and cross-interrogatories filed in the clerk's office under the rules regulating the taking of testimony in suits at common law. The usual course of practice in that class of cases has been for the party objecting to any interrogatory to note his objection under the interrogatory and to allow it to go, reserving the question for the consideration of the court in case the deposition should be taken and duly returned and offered in evidence at the trial; but it must be admitted in that case that the interrogatories were reported to the court, were before the court, were presented to the court, and received the consideration of the presiding justice. Looking at his remarks, however, it is quite clear that nothing practically useful to either party would possibly grow out of adopting the course there pursued as a general rule of practice, because Judge Story held that he would look at the interrogatories, and, if they presented any question of doubt, he would decline to decide it, and would postpone the matter until the trial, when the parties could be heard, and when they could save their rights by exceptions; and if, upon looking at the interrogatories, they were manifestly immaterial or incorrect, he would correct the error. Two things are very clearly to be inferred from those observations: first, the judge would not examine them unless they were plainly incorrect or immaterial, and then, if he did examine them at that stage of the case, and made any correction, the parties would be without remedy, as perhaps it is obvious they would be. Exceptions can only be taken in common-law suits at the trial. They must be made before the jury retire; they must be reduced to writing; they must be sealed by the judge. They may be drawn out after the jury has retired; but they must be taken during a trial, noted on the minutes of the judge, and subsequently drawn out and sealed by the judge, or they have no validity, and will not be examined in the appellate court. Taken as a whole, therefore, our conclusion is, that that decision does not furnish any substantial support to the views of the respondent in this case.

We are inclined to go a step further in respect to that decision, that it may not be a subject of misapprehension hereafter. Some inquiries have been made, and we cannot find that any such general practice has ever prevailed in the circuit. Indeed we learn of no other case of the kind. No such practice prevailed in the time of my predecessor, as I learn, and nothing of the kind since I have been in court, a period now of ten years; but the uniform course has been to allow the party to go to the clerk's office, and make his objections under the interrogatories, and save all his rights to be decided by the court at the trial. Otherwise the court would be settling moot questions very frequently, as it often happens that interrogatories are filed, and the deposition never taken, and perhaps it still oftener happens that they are filed, and the deposition taken, but so irregularly taken that it cannot be received in evidence. It is only necessary to settle those questions when the deposition has been taken, is offered in evidence, and is in a condition to be admitted to the jury; then the question arises, what portion of the statements of the deponent are proper evidence and have been properly taken?

Some other cases have also been cited, one in which the master in a chancery suit, the late Professor Greenleaf, made a certificate of the questions which arose, the interrogatories, and the matters were reported to Judge Story. The master expressed the opinion that the deposition ought to be taken,—I refer to the case of Gass v. Stinson [Case No. 5,-262],—and the case shows that Judge Story ordered the commission to issue. The interrogatories in that case were to witnesses, noʲ to either of the parties; and the master in chancery, apparently entertaining some doubt, sent the matter to the judge at chambers, because under the rules of that day the order for the commission must go from the court; there being in chancery suits no provisions for its issue by the clerk, which at a later period the rules authorized the clerk to make in common-law suits. The conclusion of the court in that case, although affording more countenance to the course adopted in this than any case the court has examined, is not sufficient to sustain the practice.

In fact our conclusion is, that in general the practice heretofore pursued and described by the court is the correct practice in equity suits, and is the general course of practice that the court will require to be followed, unless in some very special cases.

We do not decide that if the decretal order was ambiguous and indefinite, or incomplete, the master might not have authority to report the case back for more specific instructions. We do not express any decided opinion upon that point, because the case is not before us. In this case there is no suggestion that the decretal order is not sufficiently comprehensive, and if the suggestion was made our conclusion is that it could not be sustained. The decretal order is in the usual form in this class of cases, and contains the several allegations which the court have required to be inserted in such orders after a good deal of consideration.

Three times this court itself has corrected a decretal order because it was ambiguous,—twice in this district and once in the Rhode Island district, in a case where a very large amount was involved. The report of the master there was in favor of the complainant; but upon looking at the decretal order when the report came in, the court saw that one of the clauses of the order was quite ambiguous, and, perceiving that its phraseology had escaped the attention of the court at the time, the court of its own motion corrected the decretal order by a new order, and recommitted the cause to the master, and the whole subject was revised and a report brought in greatly more satisfactory to the court. The first correction of the kind in this district now resting in my memory was in the case of Howe v. Williams [Case No. 6,778], where, through inadvertence in consequence of the first draft having been lost by the counsel, after it had been fully examined and settled by the court, a new draft was prepared, varying its phraseology; and when that case came back from the master, the court, for the first time in this district, corrected, took out the ambiguity from the decretal order, and sent it back to the master. No doubt is entertained of the power of the court in that behalf.

We are not now deciding that the court might not have the power to revise each act of the master as it progressed, provided it was referred back in a formal report by the master. But we do decide that such a practice would be productive of great delays, and will not receive any countenance from the court. My opinion is that the general practice which has been pursued in this circuit is for the interest of all concerned, and until it can be clearly seen that it can be amended to the advantage of the parties litigant, and in a manner to promote the convenience of the court, we must adhere to that practice.

Sudden changes in practice, especially in equity suits, are not advisable. Great care is necessary in equity suits in following closely the rules of the court and the settled course of practice. Otherwise the bar would become confused and the court find itself involved in difficulties far greater than need be, if the regular course of practice is pursued. Some experience at the bar, and more in the courts, in this court and in the supreme court, has convinced the presiding justice of the great benefit of a careful adherence to the usual practice in equity suits. They sometimes continue for a considerable length of time; parties decease, supplemental bills, amendments to bills, and answers, and new proofs, are introduced; and in these different stages, unless there is a pretty close adherence to the known rules of practice, confusion is apt to ensue; and it is hardly necessary to remark

that, whenever a case is involved in confusion, it is embarrassing to the bar, and still more embarrassing to the court.

We feel more satisfaction in announcing this conclusion in this important case, because we are utterly unable to see how the respondent who brings the case here for the consideration of the court, on this occasion, can possibly suffer any ultimate detriment. The power of the court to revise any and every irregularity before the master is full and ample, and can in our view of the matter be best exercised when we have them before us with the whole case. Take any litigation of this volume in evidence and pleadings and it would be quite difficult for the judges to decide an isolated point to their own satisfaction, without looking at the whole or nearly the whole record; as the consideration of one point necessarily must have a bearing greater or less upon other parts of the same record.

We should be exceedingly reluctant to lay down any rule in equity which could embarrass the parties or the bar; but, on the contrary, we do not hesitate to say, if we could see by any new rule we could adopt that there would be less embarrassment to the bar, the parties, and the court, we should adopt such new rule, but our impressions are that innovations ought to be very carefully considered. Even the supreme court, in one or two instances, have adopted a rule which they thought to be an improvement, and the probabilities are very strong that they will find it necessary to revise the practice and return to the rules which existed before.

In view of the circumstances our conclusion is, that the filings entered by the clerk be stricken out, and that the several papers filed be returned by the clerk to the master.

[For another case involving this patent, see Union Sugar Refinery v. Matthiessen, Case No. 14,399.]